Merla Tool Corporation v. Commissioner.
Merla Tool Corp. v. Commissioner
Docket No. 2651.
United States Tax Court
1944 Tax Ct. Memo LEXIS 169; 3 T.C.M. (CCH) 750; T.C.M. (RIA) 44245; July 26, 1944
*169 Allen Wight, Esq., and C. A. King, C.P.A., 1713 Republic Bank Bldg., Dallas, Tex., for the petitioner. Loyal E. Keir, Esq., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion This proceeding involves deficiencies in corporate income and excess profits taxes for the fiscal years ending May 31, 1941 and May 31, 1942, in the following amounts: Excess
Income
Profits
Year Ended
Tax
Tax
May 31, 1941
$528.30
$160.36
May 31, 1942
399.28
264.00
$927.58
$424.36
The questions for decision are whether the petitioner realized a taxable gain in the disposition of certain assets in exchange for shares of its own capital stock and, alternatively, whether the petitioner realized a gain in the following year upon a disposition of a part of the stock so acquired. Findings of Fact The petitioner, Merla Tool Corporation, is a corporation of the State of Texas with its principal office at Dallas, Texas. The returns for the taxable years here involved were filed on the accrual basis with the Collector of Internal Revenue for the second district of Texas. On January 1, 1935, a partnership was formed by C. S. Crickmer, Roy A. Lamb, and D. W. Henke to engage *170 in the manufacture and sale of various types of equipment used in the oil industry. Subsequently, this partnership was dissolved and a new partnership was organized composed of the original three partners and two others, Hans C. and Fritz W. Glitsch. In August 1939, the petitioner was organized to take over the business of the partnership. All the stock of the petitioner, 40,000 shares of $1 par value, was issued to the members of the partnership in exchange for their respective interests in the partnership assets. In 1941, the petitioner was in a precarious financial condition. C. S. Crickmer was desirous of withdrawing from the corporation and setting up a business for himself and offered to sell his stock to the petitioner. At that time he was indebted to the petitioner in the amount of $1,752.14. On April 22, 1941, Crickmer, the petitioner, and the remaining stockholders entered into a contract whereby Crickmer sold his 10,000 shares of the petitioner's $1 par value stock to the petitioner in consideration of the canceliation of his indebtedness, the transfer to him of a used automobile belonging to the corporation, and $196 in cash. The automobile had a depreciated cost of $113.75 *171 and carried a prepaid license and insurance costing $30.77. The total consideration thus paid for the transfer of these shares was $2,092.66, or $.2093 per share. The 10,000 shares of stock were delivered to the petitioner on August 4, 1941, and thereafter carried as treasury stock. The difference between the consideration paid for the stock and the par value was credited on the petitioner's books as "acquired surplus." In November 1941, upon the request of four key employees of the petitioner, it entered into a written contract with the four giving each an option to purchase 500 shares of the treasury stock at $1 per share. During the fiscal year ending May 31, 1942, the four employees, in partial exercise of their options, purchased and paid for an aggregate of 750 shares of the petitioner's stock at $1 per share. Included in the total was a purchase by one Conner of 150 shares. On November 18, 1942, the petitioner repurchased 100 shares from Conner at the same price paid by him. The net operating profits and losses of the petitioner and of its predecessor partnerships, together with the salaries paid the offcers, were as follows: Officers'
Profit or Loss
Salaries
January 1, 1936 to December 31, 1936
$11,732.83
$4,800.00
January 1, 1937 to December 31, 1937
35,194.05
7,200.00
January 1, 1938 to December 31, 1938
8,718.05
4,800.00
January 1, 1939 to July 31, 1939
(12,646.77)
3,600.00
August 1, 1939 to May 31, 1940
(4,370.00)
4,600.00
June 1, 1940 to May 31, 1941
1,200.00
5,837.50
*172 The net tangible assets of the partnerships prior to the date of incorporation and of the corporation thereafter were as follows: December 31, 1936
$13,230
December 31, 1937
46,000
December 31, 1938
52,500
July 31, 1939
23,500
May 31, 1940
17,200
May 31, 1941
20,486
At the close of the fiscal year ending May 31, 1941, the tangible assets of the petitioner were as follows: Cash on hand
$ 1,180.94
Notes and accounts receivable
17,050.12
Inventory
27,968.82
Furniture and fixtures
1,550.20
Field equipment
2,548.90
Molds and patterns
1,357.14
Automobile
3,615.29
Miscellaneous
1,905.03
Total
$57,331.44
Patent rights were carried on the books of the corporation in the sum of $18,284.77. On May 31, 1941, the total indebtedness of the petitioner was $36,845.30. For the fiscal year ending May 31, 1942, petitioner's net profit, after taxes and salaries in the amount of $16,112.50, was $13,857.30. During this year its general financial condition showed marked improvement. Subsequent to April 1941, most of the petitioner's small competitors withdrew from the field in which the petitioner was engaged. After that date also the petitioner added a new product *173 to its regular line. These two factors accounted for the improvement in business in the fiscal year 1942. The fair market value of the stock transferred by Crickmer to the petitioner on April 22, 1941, was $2,092.66 on that date. The Commissioner, upon audit of the petitioner's return for the fiscal year ended May 31, 1941, adjusted gross income by the inclusion of $7,907.34 as "Gain on acquisition of own stock." The adjustment is explained in the following paragraph taken from the deficiency notice: "It is held you realized a profit of $7,907.34 in the exchange of certain assets for 10,000 shares of stock deemed to have a fair market value on or about April 22, 1941, of $10,000.00." The Commissioner determined a deficiency for the year ending May 31, 1942, by including in gross income the amount of $2,000.00 as "Proceeds on sale of stock." The adjustment is explained in the following paragraph taken from the deficiency notice: "Inasmuch as you have not agreed to the fair market value of the 10,000 shares of stock acquired during the preceding taxable year, it is held the entire proceeds of the sale of 2,000 shares during the taxable year constitute taxable income." Opinion *174 ARUNDELL, Judge: The first question for decision is whether or not petitioner realized any gain on the transaction by virtue of which it came to acquire 10,000 shares of its own $1 par value stock. The facts are that a dissatisfied stockholder wanted to dispose of his investment in the petitioner and to be relieved of a liability in the amount of $1,752.14 to petitioner on account of money advanced him and purchases made for his benefit. The transaction as consummated involved the transfer of his shares to the corporation and the cancellation of his debt, the transfer of a used automobile to him, and the payment of $196 in cash by the corporation. The automobile had a depreciated cost of $113.75 and carried a prepaid license and insurance costing $30.77. If this transaction be viewed as a purchase of stock by the corporation, as petitioner argues, it is apparent that no gain could accrue to the petitioner as a result thereof, for gain is realized not upon the acquisition, but upon the disposition of property. . The respondent contends, however, that we have here a disposition of assets by the corporation, with payment *175 in petitioner's shares. There are holdings to the effect that the satisfaction of a debt by the transfer of property may result in gain to the creditor, to the extent that the fair market value of the property transferred exceeds the amount owing to the creditor. , reversing ; , affirmed ; . Clearly there may be a gain upon the disposition of the automobile. That stock in the petitioner constituted the consideration on the part of the debtor is immaterial. , certiorari denied ; , affirming , certiorari denied . The only question is whether the fair market value of the stock received exceeded the *176 petitioner's basis for the property disposed of. The consideration paid by the petitioner totaled $2,092.66. The respondent has determined that the fair market value of the stock transferred to the petitioner by Crickmer was $10,000 on April 22, 1941, the date of the transfer. Crickmer, bound by no restrictions, was frie to sell his stock to any purchaser and so far as the record indicates the sale was not forced. The discrepancy between the value, as determined by the Commissioner, and the consideration received by Crickmer immediately raises a question as to the correctness of the Commissioner's determination. The petitioner was a small, closely-held corporation with capitalization of $40,000. In 1941 it was in a precarious financial condition. From January 1, 1939 to May 31, 1940, the petitioner and its predecessor partnership had suffered a net loss of $17,016.77. From December 31, 1938 to May 31, 1940, the net tangible assets had fallen from $52,500 to $17,200. The only transaction in the petitioner's stock in the fiscal year 1941 was the transaction here involved, when 10,000 shares were sold for a consideration of $2,092.66. The parties were dealing at arm's length and the *177 seller was under no compulsion to sell. On these facts, we are of the opinion that the determination of the Commissioner was in error and that the fair market value of the 10,000 shares of stock transferred to the petitioner was not more than the consideration paid, $2,092.66, on April 22, 1941. The petitioner, therefore, realized no gain on this transaction. The Commissioner's determination of value seems to have been prompted entirely by the fact that in the following fiscal year four key employees of the petitioner requested an option to purchase and purchased shares of the petitioner at par. However, between the time Crickmer sold his 10,000 shares and the time the employees expressed a desire to purchase shares, the business had taken a definite turn for the better. Most of the petitioner's small competitors had withdrawn from the field and the petitioner had acquired a new item of equipment. These two new factors, not present when the petitioner bought the stock from Crickmer, accounted for the increase in the petitioner's business in the fiscal year 1942. In our opinion the purchase of the stock by the employees subsequent to the increase in business is not determinative of *178 fair market value as of April 22, 1941. The second issue involves the question of whether income was realized by the petitioner in the sale of 750 shares of stock to the four employees in 1942. The petitioner's basis for the stock so disposed of was $.2093 per share. Seven hundred fifty shares were sold at par value, $1 per share. This transaction, in our opinion, gave rise to a taxable gain to the corporation. , certiorari denied , Regulations 103, section 19.22 (a)-1. The Commissioner, however, as it appears from the excerpt from the deficiency notice, set forth in our findings, failed to take into account, in computing the taxable gain, the petitioner's cost basis for the shares sold, and further computed gain on the sale of 2,000 shares, rather than the 750 shares actually sold in 1942. To this extent he was in error. Decision will be entered under Rule 50.